## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1999-CA-00453-SCT

*MARK D. WOOD, JR., BY AND THROUGH HIS FATHER AND NEXT FRIEND, MARK D. WOOD, SR.*

*v.*

*BILOXI PUBLIC SCHOOL DISTRICT AND ROBERT J. GUILLOT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/1998 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY BERNARD ZUBER, III |
| ATTORNEY FOR APPELLEES: | L. CLARK HICKS, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 03/02/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/23/2000 |

## BEFORE PITTMAN, P.J., SMITH AND WALLER, JJ.

## SMITH, JUSTICE, FOR THE COURT:

¶1. This case comes to this Court on appeal by Mark D. Wood, Jr., by and through his father from an adverse ruling of the Circuit Court of Harrison County, which dismissed Wood's lawsuit against the Biloxi Public School District and Robert J. Guillot.

¶2. The sole issue before the Court is whether the trial court erred in imposing the sanction of dismissal of Wood's lawsuit based upon Wood's supposed untruthful response in his sworn answer to interrogatory 13.

¶3. We find that the case at bar is distinguishable from the cases of *Scoggins v. Ellzey Beverages, Inc.,* 743 So. 2d 990 (Miss. 1999) and *Pierce v. Heritage Properties, Inc.,* 688 So. 2d 1385 (Miss. 1997). The trial court's ruling is based upon a single alleged untruthful response in an interrogatory. Wood's response is ambiguously worded, thus subject to several reasonable interpretations. Additionally, it is not established that Wood knowingly made a false statement and it is certainly not established that he submitted a pattern of false responses under the facts here, and apply our precedent case law, other more appropriate sanctions should be considered by the lower court. Therefore, we reverse and remand.

### STATEMENT OF THE FACTS

¶4. On May 1, 1996, Mark D. Wood ("Wood"), a high school student at the time, was injured when his vehicle was rear-ended by a Biloxi Public School District ("the School District") bus driven by Robert Guillot ("Guillot"). A week after the accident, Guillot was suspended by the School District based upon a finding that the accident had been caused by his negligence. On June 6, 1997, Wood filed suit against the

School District, and Guillot alleging that Guillot's negligent driving had caused him back and neck injuries.

¶5. In October 1997, the School District hired private investigators to conduct video surveillance on Wood in anticipation of trial. Several hours of videotape, taken on different days, depicted Wood performing various manual tasks without apparent hindrance. The October 10, 1997, video, for example, depicts Wood bending, twisting, and squatting while performing manual tasks. A video taken in February, 1998 similarly depicts Wood performing manual tasks at the tire shop at which he worked.

¶6. On January 23, 1998, Wood submitted his sworn answers to interrogatories propounded by the School District. In response to interrogatory 13, which inquired as to the extent of his injuries, Wood stated that:

> These injuries affected my attitude, my concentration, my school work, and my ability to do manual labor. I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful.

On June 23, 1998, the School District filed a motion to dismiss Wood's complaint pursuant to Rule 37 of the Mississippi Rules of Civil Procedure, asserting that Wood had made "false statements under oath to deceive the defendants and the court."

¶7. The trial judge held an evidentiary hearing on July 7, 1998 and entered a written order granting the motion to dismiss on August 12, 1998. The judge denied Wood's motion to reconsider on January 29, 1999, and Wood timely appealed to this Court.

**ISSUE**

**WHETHER THE ORDER OF DISMISSAL ENTERED AGAINST THE APPELLANT VIOLATED HIS DUE PROCESS RIGHTS, WAS INAPPROPRIATE AND AN ABUSE OF DISCRETION WHERE ALLEGEDLY THE PLAINTIFF MADE FALSE SWORN STATEMENTS IN RESPONSE TO INTERROGATORIES PROPOUNDED BY THE APPELLEE AND WHETHER OR NOT TO ALLOW THE PLAINTIFF TO PROCEED TO TRIAL IMPEDED THE ORDERLY ADMINISTRATION OF THE JUDICIAL SYSTEM**

¶8. Pursuant to Rule 37(b)(2)(C) of the Mississippi Rules of Civil Procedure, a trial judge may, in appropriate cases, impose the sanction of "dismissing the action or proceeding or any part thereof." Miss. R. Civ. P. 37(b)(2)(C). Such dismissals by the trial court are reviewed under an abuse of discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the correct legal standard, then this Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Scoggins v. Ellzey Beverages, Inc.*, 743 So.2d 990, 996 (Miss. 1999); *Pierce v. Heritage Properties, Inc.*, 688 So.2d 1385, 1388 (Miss.1997).

¶9. In *Pierce*, this Court adopted the Fifth Circuit's holding in *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir.1985) in evaluating the appropriateness of dismissal as a sanction for discovery violations. 688 So. 2d at 1389. Pursuant to this standard of review:

> (D)ismissal is authorized only when the failure to comply with the court's order results from wilfulness

or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

The Court in *Pierce* affirmed the trial court's dismissal under Rule 37(b)(2) & (e) based on a finding that the plaintiff had willfully concealed the fact that another person was present when she was injured. *Pierce*, 688 So.2d at 1387. The Court noted in *Pierce* that the plaintiff had repeatedly been untruthful in her sworn discovery statements and accordingly affirmed the trial court's dismissal. *Id.*

¶10. More recently, in *Scoggins*, this Court affirmed the trial court's dismissal under Rule 37, based upon a finding that the plaintiff had repeatedly misrepresented her prior medical history. In *Scoggins* the Court noted that:

> The plaintiff's testimony regarding her medical history was in direct contradiction to the history described in her medical records. ... Scoggins could recall the details of other aspects of her life as far back as 1958 and as recent as a few months before the hearing. The only instances she could not remember were her many visits to Dr. Pace and Dr. Bowlus. Most persuasive is Scoggins's contention she could not remember a lumbar omnipaque myelogram performed in 1991. This is an invasive and painful procedure, and it is difficult to believe Scoggins either forgot or did not consider this procedure important.

*Scoggins*, 743 So.2d at 995.

¶11. Unlike in *Scoggins* and *Pierce*, the School District bases its argument on a single response to an interrogatory submitted by Wood.[1] Wood stated in response to interrogatory 13 that:

> These injuries affected my attitude, my concentration, my school work, and my ability to do manual labor. I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful.

The trial judge found in his ruling dismissing Wood's lawsuit that:

> At the hearing on this matter, the Court heard testimony from Darrel Mittelstaedt, who authenticated the videotape evidence presented by the defendants, and verified that what was depicted on the tape was a true and accurate representation of the surveillance he conducted. The Court then viewed approximately one hour's worth of the video, which represented several days' surveillance during different months following the accident. The videotape showed the Plaintiff walking normally, squatting, twisting, bending, and generally performing normal daily functions without any indication of impairment or pain.
>
> The Plaintiff was also seen engaged in manual labor at a tire shop. He repeatedly bent from the waist, remained in a bent position for a significant period of time, twisted, turned, stooped, and squatted as he worked on wheels and tires. Mr. Wood also jumped to the ground from the rear of a truck, rolled a heavy tire, and lifted and stacked several heavy tires. Mr. Wood performed extensive manual labor in a smooth and fluid manner, free from any apparent restrictions or hesitation relative to his alleged

injuries. He exhibited no observable signs of pain or discomfort, and utilized no visible braces, supports, or orthopaedic devices of any type.

The trial court found that "the only sanction that will preserve the sanctity and integrity of the judicial process in this case and serve as a warning and deterrent to other litigants who may be tempted to make false statements in discovery, is that of dismissal with prejudice."

¶12. One reasonable interpretation of Wood's answer to interrogatory 13 is that he was not asserting that he was completely incapable of bending, lifting, or performing manual labor, but rather that he was unable to *enjoy* performing these tasks. Indeed, a literal reading of Wood's statement could reasonably lead to this conclusion. Wood stated that the injury affected his attitude and concentration, and the context of the answer could lend itself to a conclusion that Wood was merely asserting that his enjoyment of performing these tasks was impaired. Clearly, another reasonable interpretation of the answer was that Wood was asserting that his ability to perform manual tasks was substantially impaired.

¶13. The Court finds that the exact nature of Wood's assertions in this regard could only have become clear through a more extensive answer on his part, such as in other answers to interrogatories or in a deposition. Wood notes that he did qualify his answer in a deposition which was conducted on April 17, 1998. During the deposition, Wood acknowledged that he was able to perform manual tasks after the accident as before, and he asserted that performing these tasks was merely more painful than before the accident.

¶14. The School District notes that Wood was aware of the video surveillance at the time of the deposition, and it implies that Woods would not have been so forthcoming if he had not been aware of the surveillance. While this may or may not be true, the fact remains that the only discovery response which was contradicted by evidence at the hearing was one ambiguously worded response to one interrogatory question. Thus, the present case is distinguishable from *Pierce* and *Scoggins* in that it was not clearly established that Wood knowingly made false statements in discovery and it was certainly not established that Wood had engaged in a pattern of such false reponses.

¶15. In *Pierce*, the Court emphasized the fact that the plaintiff had repeatedly lied under oath, and this Court approvingly cited a federal court decision holding that:

> (T)he focus must be on the intentional nature, as well as the pattern, of the plaintiff's conduct, which included deliberately providing false responses in three discovery mechanisms: the answers to interrogatories, the request for production of documents, and the deposition testimony.

*Pierce*, 688 So.2d at 1389 (citing *Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 107 (D.Md.1989)). By contrast, in the present case, Wood is only alleged to have been untruthful with regard to one question, however, even the one allegedly false interrogatory response is subject to differing interpretations.

¶16. The School District would have a much stronger case if Wood had asserted during his deposition that he was in fact unable to perform his work functions as before. While it may be true that Wood's candor during his deposition can be attributed to his knowledge of the surveillance having been conducted, the fact remains that Wood acknowledged in his deposition testimony that he was able to perform tasks as before the accident. The present case does not involve one of "those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice," the trial court abused his discretion in concluding otherwise. *Scoggins*, 743 So.2d at 997.

¶17. The videotaped surveillance of Wood constitutes relevant evidence which can and should be considered by the trial judge on remand. The School District concedes liability in the present case, and the sole issue on remand will relate to the damages which Wood has suffered. Clearly, the fact that Wood is, by his own admission, able to perform the same functions following the accident as before will serve to limit the amount of damages, if any, which he is entitled to recover.

## CONCLUSION

¶18. This Court finds that the alleged untruthfulness in Wood's interrogatories, if any, does not constitute a sufficiently egregious discovery violation such that "no other sanction will meet the demands of justice." *Id.* Therefore, the judgment of the Harrison County Circuit Court is reversed, and the present case is remanded to the trial court for trial.

¶19. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PITTMAN, P.J., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING.**

1. In its motion to dismiss, the School District asserted that it would also be able to demonstrate other instances in which Wood was allegedly untruthful. The School District, for example, asserted that it would be able to produce testimony from school officials that, contrary to his deposition testimony, Wood was playing basketball within days of his accident. The School District produced no such testimony at the hearing, however, and it acknowledges that the trial judge based his dismissal solely upon the interrogatory response.