805 So.2d 633 (2002)
James C. SMITH, Appellant,
v.
TOUGALOO COLLEGE and Tougaloo College Economic Development Corporation, Appellees.
No. 2000-CA-01504-COA.
Court of Appeals of Mississippi.
January 22, 2002.
*636 Gary Keith Silberman, Jackson, Attorney for Appellant.
R. Pepper Crutcher, Jr., Rebecca L. Hawkins, Phelps Dunbar LLP, Jackson, Attorneys for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
SOUTHWICK, P.J., For The Court.
¶ 1. James C. Smith appeals the dismissal of his cause of action against Tougaloo College and Tougaloo College Economic Development Corporation. Smith argues that he was not required to produce all documents requested by the defendants and that the circuit court erred by not imposing a sanction less severe than dismissal. We disagree and affirm.

STATEMENT OF FACTS
¶ 2. On June 16, 1998, James C. Smith filed suit against Tougaloo College and Tougaloo College Economic Development Corporation (which we will collectively refer to as "Tougaloo") alleging breach of contract, breach of covenant of good faith and fair-dealing, intentional infliction of emotional distress, and intentional interference with a contract. Smith alleged that his employment contract with Tougaloo required the college to provide him with three-months' notice of Tougaloo's intent to terminate him or not to renew his contract. Smith alleged that he was provided with less than one month's notice. Smith sought compensatory, consequential, and punitive damages.
¶ 3. Some attempt was made at mediation, but that proved to be unsuccessful. On July 22, 1999, Tougaloo served Smith with interrogatories and request for documents. Interrogatory No. 4 requested that Smith "identify every document on which you or another recorded the income you have received since the beginning of the wrongs for which you seek relief in this action." On December 13, 1999, Tougaloo served Smith with a second request for documents.
¶ 4. On December 20, 1999, Tougaloo filed a motion to compel plaintiff to answer interrogatories and to produce documents. This motion alleged that Smith had failed to answer the interrogatories and produce the documents requested in July 1999. The motion requested that Smith be warned that if he did not produce the documents requested and answer each interrogatory fully that his cause of action would be dismissed with prejudice. On *637 January 19, 2000, Tougaloo filed another motion to compel plaintiff to produce documents. This motion concerned the documents requested on December 13, 1999. The documents sought were as follows:
Each schedule K-1, each form W-2, and each form 1099, which reflects income earned since June 30, 1997, as well as each statement of account activity (including, but not limited to bank statements) reflecting revenues received and/or expenses paid since June 30, 1997.
¶ 5. The December motions alleged that Smith "has failed to respond to the request or to produce the requested documents" and "has ignored the request just as he has ignored, and continues to ignore the interrogatories and document request served upon him in July, 1999."
¶ 6. On January 21, 2000, an agreed order on Tougaloo's motion to compel was entered. The order did not raise the possibility that failure to comply would result in dismissal.
¶ 7. On February 28, 2000, Tougaloo filed a motion for civil contempt. In the motion, Tougaloo stated that it had sought to discover, through its interrogatories and document requests, the income which Smith had earned after being terminated. Tougaloo noted that Smith had produced some documents but had not produced others. Tougaloo alleged that Smith had failed or refused to produce bank records which would be needed to verify Smith's alleged damages. Tougaloo requested, in light of the fact that it had filed two previous motions to compel, that the circuit court, pursuant to Civil Rules 37(b)(2)(A) and 37(e), declare that Smith "suffered no loss of employment compensation as a result of the wrongs attributed to the defendants."
¶ 8. On April 26, 2000, another agreed order was entered by the circuit court. The order stated that Tougaloo's motion for civil contempt would be granted unless the following occurred within ten days of the order's entry:
a. Plaintiff shall deliver to defense counsel the original, or a complete, authentic, legible copy of each original documents requested by the Defendants in their written discovery requests, including the Plaintiff's bank account records showing all income and other deposits made since he last worked for Defendants, or either of them.
b. Plaintiff shall serve with the documents delivered to Defendants' counsel an index of them as certification of what has been produced....
¶ 9. On May 16, 2000, Tougaloo filed a motion to enforce the agreed order. Ten days later, the circuit court ordered Smith to demonstrate why Tougaloo should not be granted the relief sought. On June 29, 2000, a hearing was held and Smith produced some documents.
¶ 10. On July 5, 2000, Tougaloo filed a motion to dismiss alleging that Smith did not fully comply with the circuit court's previous orders to produce the documents requested. Attached to the motion was an excerpt from Smith's deposition. Smith has been asked what he would use to determine his income, and he replied, "Possibly whatever notations I might have on paper." When asked again if he would look at any records, other than his bank account statements, to determine his income, Smith replied, "If there are other records, I would." Tougaloo's attorney responded, "What other records are there? That's what I'm trying to get to." The questioning continued as follows:

Counsel: What I need to know is whether there are any other records, other than your bank statements, you are going to look at to determine what income *638 numbers, to put in for your Schedule K calculations.

Smith: I mean, I will report my income as honestly and accurately as I can for 1999.

Counsel: I'm not questioning that. I'm just asking are there records, other than your bank statements, which you will look at to determine what that income was.

Smith: We already said that I would look at expenses.
. . .

Counsel: ... What records will you look at to figure out what were your gross revenues in 1999?

Smith: I would look at deposit slips, I guess.

Counsel: Deposit slips and bank statements. Is that correct?

Smith: Yeah, but [noting] whether that was, you know, for work done or a loan from the owner.

Counsel: Will you look at any other records, other than bank statements or deposit slips, to determine your gross revenues for 1999?

Smith: I can't honestly at this point think of any, but if there's any at this point that would benefit me, I would.

Counsel: During 1999, where have you maintained accounts in which you have deposited any or all of your gross revenues?

Smith: Again, you want a list of banks I have accounts at?

Counsel: If you deposited income there.

Smith: You know, Trustmark, Union Planters.
¶ 11. Smith later stated that all of the deposits into the Trustmark and Union Planters accounts came from either his business or withdrawals from his retirement account.
¶ 12. In its motion, Tougaloo maintained that these bank records are necessary to verify the income Smith reported on his K-1's, which related to a corporation that he owned. Tougaloo stated that the documents produced at the June 29, 2000, contempt hearing related to only one account at Union Planters National Bank. The motion alleged that Smith failed to produce records pertaining to his personal bank account or Trustmark National Bank account, the deposit slips which Smith had previously testified he would review to determine his income, complete bank account records for 1997 and 1998, and copies of Form 1099 and W-2 for the same period. The motion requested that Smith's suit be dismissed with prejudice.
¶ 13. A hearing on the motion to dismiss was held on August 11, 2000. At the hearing, counsel for Tougaloo stated that what was given to him at the previous hearing was a "hit and miss collection of bank statements, some appearing to be entire bank ledgers, no checks or deposit slips attached, for some months, for one bank account at one of the two banks that Mr. Smith had told me he maintained accounts in for a corporation which Mr. Smith says he owns...." Counsel also stated that Smith had failed to furnish other documents to support the figures on his Schedule K-1's and that it "seem[ed] to me to be part of a continuing tap dance he's doing with me trying to keep me from discovering what is his replacement income."
¶ 14. Counsel for Smith responded that Smith had turned over all documents in his possession and that counsel for Tougaloo could subpoena "other documents that he knows about that Mr. Smith does not have in his possession." Counsel for Tougaloo responded, "Well, that's just it, your honor. Only Mr. Smith knows what exists.... *639 What Mr. Silberman now proposes that I do is go depose Mr. Smith for a third time and then apparently go to his banks, as if he couldn't go to his own banks and get his records, and then, what, depose him a fourth time after I have the records? At some point, the artful dodging has to stop."
¶ 15. The circuit court entered an order dismissing Smith's cause of action. The court specifically found that Smith "never served responses to interrogatories and document production requests ..., has taken no good faith action to comply with the Court's Agreed Orders of January 21, 2000 or April 26, 2000, ... and failed to respond in writing to the Show Cause Order issued May 26, 2000." The court also found that the documents tendered by Smith at the June 29, 2000, hearing was for the "purpose of inducing the Court to deny the Defendants' Motion to Enforce the April 26, 2000 Agreed Order, which, if enforced, would have deemed it established that the Plaintiff has suffered no economic injury from the wrongs he attributes to the Defendants." Smith's "production of documents was materially incomplete and evasive." The court concluded by stating that Smith's "evasion of this relevant discovery has been wilful, premeditated and undertaken for the purpose of avoiding a fair trial of his damage claim."
¶ 16. Smith's appeal has been deflected to this Court.

DISCUSSION

1. Mississippi Rule of Civil Procedure 34
¶ 17. The requirements for document production are set out in this procedural rule:
Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably useable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody, or control of the party upon whom the request is served....
M.R.C.P. 34.
¶ 18. Smith argues that he complied with M.R.C.P. 34(a) and the orders to compel because he produced those records that were in his possession. Smith argues that it was the obligation of Tougaloo, after having thoroughly deposed Smith and obtaining copies of some bank statements, to obtain the other records which Tougaloo had requested. Smith notes that Tougaloo "did not utilize discovery tools such as the court's subpoena power" and "made no attempt to obtain any documents through a subpoena duces tecum."
¶ 19. Rule 34(a) requires that documents, discoverable under Rule 26(b), be produced "which are in the possession, custody, or control of the party upon whom the request is served." The bank account records which Tougaloo requested were in the "control" of Smith, and therefore, Smith was obligated to produce them. Smith has made no argument that the documents in question were not within the scope of discoverable material. Complete responses to properly made discovery requests are required. It is not enough to say that the requesting party has other avenues to follow in order to get the necessary materials. Even if Tougaloo could have sought subpoenas and served the *640 banks that Smith had identified, that does not relieve Smith from complying with the order compelling discovery. See Miss. Code Ann. § 13-1-245(2)(10) (Supp.2001) (subpoena duces tecum to bank).
¶ 20. In any event, Smith was ordered by the circuit court on at least two separate occasions, both orders entered as agreed orders, to produce the documents in question. The previous agreed order was very specific as to what Smith was to produce. Smith admitted that he maintained accounts at the two banks. Smith has made no argument that he produced records pertaining to both accounts or that he produced complete records. He only argues that Tougaloo could have subpoenaed the records. Smith was not in compliance with the court's orders or with Rule 34(a).

2. Dismissal
¶ 21. Having found that Smith was required to produce the records in question, we now turn to the question of whether dismissal was appropriate.
¶ 22. Rule 37 allows a party to seek an order compelling discovery when the opposite party fails to answer an interrogatory propounded under Rule 33 or fails to respond to a request for documents under Rule 34. M.R.C.P. 37(a)(2). The rule treats "an evasive or incomplete answer... as a failure to answer." M.R.C.P. 37(a)(3). The rule also allows the trial court to dismiss an action for failing to respond in accordance with previous court orders. M.R.C.P. 37(b)(2)(C).
¶ 23. A trial court's dismissal of a cause of action is reviewed for any abuse of discretion. Wood v. Biloxi Pub. Sch. Dist., 757 So.2d 190, 192 (Miss.2000). "When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard." Wood, 757 So.2d at 192. If no error exists there, then we will uphold the decision unless we have a "`definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" Id. "The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket." Tinnon v. Martin, 716 So.2d 604, 611 (Miss.1998). The exercise of that power should be limited to "the most extreme circumstances." Gilbert v. Wal-Mart Stores, Inc., 749 So.2d 361, 364 (Miss.Ct.App.1999).
¶ 24. The following factors are the basis for evaluating the appropriateness of dismissal as a sanction for discovery violations:
First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.
Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1389 (Miss.1997). These are considerations and not four absolute requirements.

a. Wilfulness or Bad Faith
¶ 25. "If the failure to comply is because of inability to comply, rather than because of willfulness, bad faith, or *641 any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that can be invoked." White v. White, 509 So.2d 205, 207 (Miss.1987). The required intent may be shown by a party's failure to obey a court order, but that can be countered by proof of an inability and not a refusal to comply. White, 509 So.2d at 208. It may be that willfulness or bad faith is so clearly evidenced that the four Pierce factors will be irrelevant to the upholding of dismissal. Id. "A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations." Pierce, 688 So.2d at 1390.
¶ 26. The circuit court found that Smith's failure to produce the requested account statements was "wilful, premeditated, and undertaken for the purpose of avoiding a fair trial of his damage claim." Also found was that Smith failed to comply in good faith with two agreed orders that required that he answer interrogatories and produce documents set out in discovery requests submitted in July 1999. The court also found that the documents that Smith produced at the contempt hearing, which he represented to be all the documents requested by Tougaloo, were in fact not all the documents. Smith concedes the point but states that the remaining documents "under his control" are physically at his banks.
¶ 27. Smith has not argued that he is unable to produce the requested documents or answer the interrogatories. The trial judge had grounds to find that Smith wilfully disobeyed the orders of the court, and at best, that Smith exhibited gross indifference to his obligations. Here, there is sufficient evidence that Smith's failure to comply was wilful and in bad faith.

b. Deterrent Value
¶ 28. The circuit court made no specific finding as to this factor. In a decision dealing with Rule 41(b), which concerns involuntary dismissal and is similar to Rule 37, the Supreme Court stated that "where there is no indication in the record that the lower court considered any alternative sanctions ..., appellate courts are less likely to uphold a Rule 41(b) dismissal." American Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181 (Miss. 1998). Although the order dismissing Smith's case does not specifically evaluate lesser sanctions, it is clear from the record that the circuit court considered the lesser sanction of precluding part of Smith's claim. The judge warned Smith in the agreed order of April 26, 2000, that such sanction might be imposed for failure to comply. By the time of the final hearing, this lesser sanction had been considered but apparently was not seen as sufficient.
¶ 29. We find it within the trial court's discretion to conclude that any sanction short of dismissal would not serve a deterrent purpose. Smith had been ordered by the circuit court to produce the documents on at least two occasions. The agreed order of April 26, 2000, stated that if Smith did not comply with the obligations contained within the order that it "would be deemed established that [Smith] has suffered no economic damages...." Apparently, Smith was quite willing to accept this sanction, a sanction short of complete dismissal, as he did not produce the requested documents. As evidence of this willingness, Smith states in his brief that in the agreed order of April 26, 2000, that "[n]o mention of any more severe sanction was made in this order. The trial court threatened one sanction, specifically tailored to the discovery violation alleged, and then imposed an infinitely more harsh *642 sanction." It should be noted, though, that before that harsher sanction was imposed the defendant filed a motion seeking dismissal. The stakes for continued refusal to respond were clear.
¶ 30. It is arguably implicit in Smith's statement that he would have complied with the circuit court's order only if he had known that the ultimate sanction was to be imposed. That in itself defines that a lesser sanction would have served no deterrent purpose.
¶ 31. To allow Smith to defy the orders of the circuit court and conceal information which he himself has admitted exists "would discourage diligence in seeking out relevant documents even on the part of those not actively dishonest. Lack of diligence or negligence would not only be unpunished, it would be rewarded." Pierce, 688 So.2d at 1390.
¶ 32. "Dismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice." Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 997 (Miss.1999). Smith has refused to answer interrogatories and to produce documents for well over one year and in the face of at least two court orders. This conduct qualifies as being egregious and no lesser sanction would serve to protect the integrity of the judicial process or meet the demands of justice.

c. Trial Preparation Substantially Prejudiced
¶ 33. The trial court made no specific finding as to this factor. Smith argues that Tougaloo is unable to demonstrate that it has in any way been prejudiced and that any prejudice Tougaloo may have suffered could be remedied by precluding any claim of economic damages. While substantial prejudice is a factor to be considered along with the others, the Supreme Court has stated that "there is no requirement that the defendant be substantially prejudiced by the absence of evidence." Pierce, 688 So.2d at 1391. "When a party has frustrated the orderly judicial process by false or erroneous responses to interrogatories, that party should not be able to argue that its own conduct has removed it beyond the reach of sanctions." Id. at 1390. "It would be ridiculous to allow a party who completely thwarts discovery to escape penalty simply because it could not be proven that other litigants were in fact deceived by such misconduct or actually relied upon it." Id.

d. Conduct Attributable to Client or Attorney
¶ 34. The circuit judge stated at the hearing that "I think Mr. Silberman [Smith's attorney] has done all he could to get the documents from this particular person." Smith's attorney stated that "Mr. Smith turned over what he said he had."
¶ 35. There are reasonable inferences from the evidence in the record that the neglect in this case is attributable to Smith rather than to his attorney. Smith's failure to produce the requested documents would not have resulted from "confusion or sincere misunderstanding of the court's orders" as the orders were specific as to what was to be produced and what was expected.
¶ 36. As noted previously, willfulness or bad faith may be so clearly demonstrated that consideration of the other Pierce factors is unnecessary. Such conduct exists here. This is especially so where the circuit court allowed Smith more than one opportunity to remedy his failure to comply with the orders of the court before his cause of action was finally dismissed.
*643 ¶ 37. In order to reverse, we would need to be of a "definite and firm conviction that the court below committed a clear error of judgment" in dismissing this matter. We are not convinced.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY DISMISSING APPELLANT'S CAUSE OF ACTION WITH PREJUDICE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.