IRVING, P.J.,
Dissenting:
¶ 24. This appeal concerns the propriety of sanctions granted against the City of Jackson for failing to produce a document sought by the appellees during discovery. The circuit court granted sanctions against the City in the amount of $184,961.48, plus interest at the rate of 8 percent. This amount represents the total amount of damages, plus attorneys’ fees and expenses, allegedly suffered by the appellees as a result of the City’s negligence that caused the flooding of appel- *665 lees’ property. Effectively, the circuit court granted a default judgment against the City.
¶ 25. The majority finds no abuse of discretion and affirms. With due respect, I find that on the unique facts presented here, the circuit court abused its discretion in granting such draconian sanctions and that the majority errs in affirming that abuse. While I believe some sanctions were appropriate, I cannot agree that the sanctions ordered by the circuit court were appropriate. Therefore, I dissent. I would reverse and remand for less severe sanctions.
¶ 26. The appellees sued the City, seeking damages allegedly suffered by them when Eubanks Creek overflowed and flooded their property. According to the appellees’ complaint, the City negligently allowed the channel of Eubanks Creek to be blocked by garbage dumpsters, and this blockage caused the creek to overflow.
¶ 27. In the course of prosecuting their lawsuit, the appellees propounded discovery to the City wherein they sought the production of “any standard operating procedure (SOPs) [sic] which govern [sic] the site of the subject incident.” The City responded that it had none but that it would supplement upon receipt of any information. It later supplemented its response with the following:
There was no standard operating procedure which governed water[-]quantity control in the City of Jackson at the time of the incident. Matters were handled by exterior or interior complaint with routine inspections made before and after rain events on problem areas. Beginning November 26, 2004, the City adapted from the Operations and Maintenance Manual prepared for water[-]quality requirements of the EPA [Environmental Protection Agency] a Storm Water Drainage Maintenance Plan for waterf-]quantity purposes. A copy is produced.
(Emphasis added). However, the referenced document was not produced, and neither a follow-up request for production nor a motion to compel was filed by the appellees. It is my understanding from the record that the document referred to by the City in its supplemental response is a document entitled, “Streets, Bridges, and Drainage Division of the Public Works Department: City of Jackson, Mississippi Operations and Maintenance Policy Manual” (operations manual). The City’s supplemental response was made on February 4, 2005. The matter was not scheduled for trial until April 7, 2008. It is not entirely clear to me from the record when the request was made of the City, but it appears that the request was made on July 12, 2004, approximately four months prior to the period of time referenced in the City’s supplemental response.
¶ 28. While examining the file of another case filed against the City, the appellees discovered the operations manual in an evidence cabinet in the circuit clerk’s office. This discovery occurred seven days prior to trial.
¶ 29. It is clear that the City did not possess “any standard operating procedure (SOPs) [sic] which govern [sic] the site of the subject incident,” that being Eubanks Creek. The operations manual was broader in scope, as it addressed “operation and maintenance policies for the management of the City’s storm[-]water[-]drainage system.” However, I do not intend to suggest that this discrepancy in title provides justification for the City not producing the manual. It does not. Rather, I think that it may explain, at least in part, why, given the constant turnover in the City’s legal department, it could have easily and innocently been overlooked by someone who *666 did not have a long history in the legal department.
¶ 30. While it is undisputed that the City did not produce the manual, the production of which was required by the discovery that the appellees sought, it is clear to me that the evidence does not support a finding that the City’s failure to produce the manual was either wilful, intentional, or indicative of a gross indifference to its obligation to produce it. In its order granting sanctions, the circuit court stated: “The court does not find that the City intentionally concealed or knowingly concealed the document as the [c]ourt is aware that some turnover of personnel exists in the City Attorney’s Office.” In his bench opinion, the circuit judge noted that there “ha[s] been a change in personnel!,] as shown by the record!,] in the City [Attorney's [0]ffice over the last several years.” Notwithstanding this finding, the circuit court granted the sanctions, as it found that the City showed “gross indifference to its discovery obligations.” The circuit court based its decision to grant the “death!-] penalty” sanction upon the holdings in Pierce v. Heritage Properties, Inc., 688 So.2d 1385 (Miss.1997) and Smith v. Tougaloo College, 805 So.2d 633 (Miss.Ct. App.2002). In my judgment, the holding in neither of these cases require the result reached by the circuit court, because the evidence does not show that the City acted with gross indifference to its discovery obligations.
¶ 31. While the City’s supplemental response did not specifically identify the operations manual by title, it was at least as specific as the appellees’ request. Neither the appellees’ request nor the City’s response was specific. The importance of the City’s imperfect supplemental response is that it militates against a finding that the City was grossly indifferent to its discovery obligation. Otherwise, the City would not have identified a document, which arguably is the document in question even though the title utilized in the City’s response is not the precise title of the document. Importantly, there has been no showing that the City’s supplemental response was referring to a document other than the operations manual. The majority infers that the City’s supplemental response did not provide to the appellees any notice of the operations manual because their lawsuit was not about water quality. I agree with the majority that the appellees’ lawsuit was not about water quality, but neither was the City’s response. Properly read, the City stated in its supplemental response that beginning in November 2004, it had adapted a “Storm Water Drainage Maintenance Plan for water[-]quantity purposes” from the Operations and Maintenance Manual prepared for water[-]quality requirements by the EPA. I interpret this to mean that the City utilized the EPA’s Operations and Maintenance Manual for Water Quality as a pattern to prepare the City’s storm-water-drainage-maintenance plan for water quantity, not maintenance plan for water quality, as interpreted by the majority. Clearly, the appellees were placed on notice by the City’s supplemental response that the City possessed a storm-water-drainage-maintenance plan for water quantity. Water quantity in the context of a storm[-]water-drainage-maintenance plan can only mean, in my judgment, a plan for managing the flow, or quantity, of storm water through the City’s drainage systems.
¶ 32. For the reasons discussed, I dissent. I would reverse the judgment of the circuit court and remand this case to the court for less severe sanctions that would allow proper punishment for the City’s failure to produce the document but not prevent the City from defending against *667 the appellees’ complaint in a trial to be had in the matter.
GRIFFIS, P.J., AND MAXWELL, J., JOIN THIS OPINION.