GRIFFIS, P.J., FOR THE COURT:
 

 ¶ 1. Shannon and John Westfall appeal the circuit court's dismissal of their negligence claims based on discovery violations. This case considers whether the dismissal was appropriate under Mississippi Rule of Civil Procedure 37 and
 
 Pierce v. Heritage Properties, Inc.
 
 ,
 
 688 So.2d 1385
 
 (Miss. 1997). We find reversible error and remand for further proceedings.
 

 FACTS
 

 ¶ 2. On June 3, 2013, Shannon was involved in an automobile accident in Pontotoc, Mississippi. Shannon's automobile was hit by a tractor trailer driven by Randy Goggins and owned by his employer, Carnes Frames, Inc. As a result of the accident, Shannon and her husband, John, commenced a civil action against Goggins and Carnes (the defendants). Shannon alleged that she "sustained serious physical injuries as a proximate result of the motor-vehicle accident" and has "undergone serious and continuous medical treatment for the injuries [she] sustained." John claimed that he "suffered a loss of consortium and companionship as a proximate result of the motor-vehicle accident."
 

 ¶ 3. In discovery, Shannon provided the defendants with a medical authorization, she responded to interrogatories, and she was deposed. Thereafter, on September 15, 2014, the defendants filed a motion to dismiss that claimed that Shannon had made false representations in her discovery responses, which were willful and in bad faith. The defendants further argued that the only appropriate sanction for such discovery violations was the dismissal of the Westfalls' complaint with prejudice.
 

 ¶ 4. On July 1, 2015, the circuit judge held a hearing on the motion to dismiss. At the hearing, the Westfalls' counsel moved and was granted leave to provide an affidavit from a medical provider to correct an inaccuracy in one of the medical records relied on by the defendants. The information was provided to the circuit judge in a timely manner, and it corrected an inaccuracy in the medical records.
 

 ¶ 5. Eight months later, on April 26, 2016, the circuit court entered its findings of fact and conclusions of law. The circuit judge's order granted the motion to dismiss
 and dismissed the Westfalls' complaint with prejudice. It is from this order that the Westfalls now appeal.
 

 ANALYSIS
 

 ¶ 6. The question here is whether the circuit court committed reversible error in the decision to dismiss the Westfalls' complaint under Rule 37 and
 
 Pierce
 
 .
 

 ¶ 7. This Court must review the decision under an abuse-of-discretion standard.
 
 Pierce
 
 ,
 
 688 So.2d at 1388
 
 . We may only reverse the dismissal if there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon [its] weighing of [the] relevant factors."
 

 Id.
 

 ¶ 8. In
 
 Pierce
 
 , the plaintiff was injured when a ceiling fan in her apartment fell from the ceiling onto her.
 

 Id.
 

 at 1387
 
 . During discovery and at trial, she concealed the fact that another person was present in the room when the ceiling fan fell.
 

 Id.
 

 at 1387-88
 
 . On numerous occasions, through extensive discovery, and in response to interrogation at the first trial, she maintained that she was alone when the accident occurred.
 

 Id.
 

 at 1387
 
 . After a new trial was granted, for other reasons, it was discovered that she had lied.
 

 Id.
 

 at 1388
 
 . The circuit court found that such a blatant lie, even though there was no prejudice to the defendants, was grounds to dismiss her case.
 

 Id.
 

 ¶ 9. The supreme court's analysis in
 
 Pierce
 
 provides us with the framework we must consider in this appeal:
 

 Pierce contends that the circuit court erred and abused its discretion by imposing the sanction of dismissal with prejudice, thereby barring her from any recovery for injuries caused when the ceiling fan fell on her. Specifically, the appellant argues that the trial court misapplied Mississippi Rule of Civil Procedure 37(b)(2) by imposing the "death penalty" and dismissing her lawsuit.
 

 The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.
 

 Such dismissals by the trial court are reviewed under an abuse-of-discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones [that] could have been made. This Court will affirm a trial court's decision unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon [its] weighing of [the] relevant factors.
 

 Pierce
 
 ,
 
 688 So.2d at 1388
 
 (internal citations and quotation marks omitted). Of particular note, the supreme court expressed an important word of caution and admonition: "Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery
 
 only under the most extreme circumstances
 
 ."
 

 Id.
 

 (emphasis added).
 

 ¶ 10.
 
 Pierce
 
 began the "death penalty" line of cases. Since then, there have been a number of appellate decisions that have considered this issue. Recently, in
 
 Kinzie v. Belk Department Stores, L.P.
 
 ,
 
 164 So.3d 974
 
 (Miss. 2015), the supreme court addressed this very issue:
 

 In
 
 Pierce,
 
 this Court held that dismissal was appropriate because the plaintiff had flat-out lied under oath about the existence of an eyewitness to the incident that had caused the plaintiff's alleged injuries and had "consistently obstructed the progress of the litigation by filing admittedly false responses to various discovery requests and by swearing to false testimony in depositions." [
 
 Pierce
 
 , 688 So.2d] at 1390. This Court determined that dismissal was appropriate because the plaintiff had acted in bad faith, and that any sanction other than "dismissal would virtually allow the plaintiff to get away with lying under oath."
 
 Id.
 
 at 1390-91. The Court noted, however, that it would remain very reluctant to affirm such a harsh sanction, and did so in that case only because it provided "the
 
 paradigm
 
 situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a
 
 great deal
 
 of perjured testimony."
 
 Id.
 
 at 1391 (emphasis added).
 

 In other cases in which this Court has affirmed dismissal, the discovery violations were similarly egregious. In
 
 Scoggins v. Ellzey Beverages, Inc.
 
 ,
 
 743 So.2d 990
 
 (Miss. 1999), the plaintiff, who could perfectly recall the details of several aspects of her life for many years, completely failed to disclose several invasive medical procedures and doctors' visits that were relevant to her claim. The trial court in that case found that the plaintiff made an "apparently deliberate attempt to subvert the judicial process," and she presented "no credible explanation for the total lack of congruence between her testimony and her medical records."
 

 Id.
 

 at 994
 
 [ (¶ 18) ]. This Court affirmed, again noting that this case presented a rare instance "where the conduct of a party is so egregious that no other sanction will meet the demands of justice."
 

 Id.
 

 at 997
 
 [ (¶ 36) ].
 

 More recently, in
 
 Ashmore v. Mississippi Authority on Educational Television
 
 ,
 
 148 So.3d 977
 
 , 985 [ (¶ 24) ] (Miss. 2014), we affirmed a dismissal where the plaintiff had "lied by concealing a right-knee surgery and degenerative joint disease in his right knee." The plaintiff also had hidden the existence of "a subsequent left-knee injury or degenerative disc disease in his back, despite medical reports to the contrary."
 

 Id.
 

 Once again, the discovery violations that justified dismissal were clear and unequivocal falsehoods.
 

 However, where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal. In
 
 Wood ex rel. Wood v. Biloxi Public School District
 
 ,
 
 757 So.2d 190
 
 , 193 [ (¶ 11) ] (Miss. 2000), the plaintiff responded to an interrogatory regarding the nature of his injuries by stating, "I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful." After viewing undercover surveillance video of the plaintiff "walking normally, squatting, twisting, bending, and generally performing normal daily functions without any indication of impairment or pain," the trial court dismissed the plaintiff's case.
 

 Id.
 

 This Court reversed, finding that "the only discovery response [that] was contradicted by evidence at the hearing on the motion to dismiss was one ambiguously worded response to one interrogatory question."
 

 Id.
 

 at 194
 
 [ (¶ 14) ]. As the plaintiff's response indicated that he could still perform certain tasks, just with less enjoyment than before, the Court held that the defendants did not establish that the plaintiff "knowingly made false statements in discovery and
 it was certainly not established that the plaintiff had engaged in a
 
 pattern
 
 of such false responses."
 

 Id.
 

 (emphasis added). The Court held "that the alleged untruthfulness in Wood's interrogatories, if any, did not constitute a sufficiently egregious discovery violation such that no other sanction will meet the demands of justice."
 

 Id.
 

 at 195
 
 [ (¶ 18) ].
 

 We find the discovery violation in this case to be more similar to the alleged discovery violation in
 
 Wood
 
 than the unequivocally false and misleading discovery violations found in
 
 Pierce
 
 ,
 
 Scoggins
 
 , and
 
 Ashmore
 
 . In
 
 Wood
 
 , the plaintiff stated that he could no longer enjoy certain activities as he could before being injured. Here, Kinzie stated that he could not perform several activities as he could before his injury. He was truthful when it came to his medical record and his medically diagnosed work restrictions. Kinzie indisputably was injured. He went to an emergency room immediately after his accident and, at that time, was diagnosed with central-disc protrusion, disc desiccation, and disc bulging. He underwent an invasive surgical procedure on his spine. The activity observed in the undercover video did not stray outside of his medical work restrictions, and it did not encompass any of the specific activities that he stated he no longer could perform. The trial court found this to be a discovery violation. While the trial court cannot be said to have been manifestly wrong in its determination that there was, in fact, a discovery violation, the severe sanction of dismissal amounts to clear, reversible error amounting to an abuse of discretion.
 

 Kinzie did not blatantly lie about the existence of a witness, as did the plaintiff in
 
 Pierce
 
 , nor did he completely misrepresent years of medical history and procedures, as did the plaintiff in
 
 Scoggins
 
 , nor did he hide any other surgeries, as did the plaintiff in
 
 Ashmore
 
 . The Court finds no "total lack of congruence" between Kinzie's responses and his medical records, as the trial court found in
 
 Scoggins
 
 .
 
 Scoggins
 
 ,
 
 743 So.2d at 994
 
 [ (¶ 18) ]. Nor do we find this to be "the
 
 paradigm
 
 situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a
 
 great deal
 
 of perjured testimony" as this Court found in
 
 Pierce
 
 .
 
 Pierce
 
 ,
 
 688 So.2d at 1391
 
 (emphasis added). Instead, and similar to the plaintiff in
 
 Wood
 
 , Kinzie answered an interrogatory about the extent of his injuries in a way that the trial court thought was misleading. And here, although the trial court found Kinzie's response to be false, the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of
 
 pattern
 
 of misleading or false responses.
 

 Analogously, this Court has reversed a trial court's dismissal based on [Mississippi] Rule of Civil Procedure 41(b) where the trial court failed to consider lesser sanctions, including "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings."
 
 Am. Tel. & Tel. Co. v. Days Inn of Winona
 
 ,
 
 720 So.2d 178
 
 , [181-82 (¶ 17) ] (Miss. 1998) (quotation omitted). Just as this Court found then, in this case, "it is not at all certain that lesser sanctions would have been futile in expediting the proceedings."
 

 Id.
 

 [at 182 (¶ 17) ]. Although we do not find, as did the Court of Appeals, that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation, we hold that the trial court erred when it dismissed the case completely as a
 result of that violation while paying mere lip service to the possibility and practicality of lesser sanctions.
 

 ....
 

 Dismissal is appropriate only under the most extreme circumstances and only where lesser sanctions will not suffice.
 
 Pierce,
 

 688 So.2d at 1388-89
 
 . This is not an extreme case, and lesser sanctions can deter misleading responses without dismissing Kinzie's claims altogether. A jury will watch this video, and that may influence its ultimate determination. But a jury ought to make that ultimate determination, not the trial judge. The discovery violation at issue is not sufficiently extreme to justify a full and final dismissal of the case. We therefore affirm that portion of the judgment of the Court of Appeals [that] held that dismissal with prejudice was not warranted. We reverse the Court of Appeals' finding that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation. We reverse the judgment of the Circuit Court of the First Judicial District of Hinds County dismissing the case with prejudice, and we remand the case for trial.
 

 Kinzie
 
 ,
 
 164 So.3d at 977-80
 
 (¶¶ 6-13).
 

 ¶ 11. Based on this governing authority, we examine the facts of this case. Shannon provided the following interrogatory responses:
 

 INTERROGATORY NO. 7: Have you been involved in any type of accident or had any medical problem, either before or after the accident in question in this case, as a result of which you were seen or treated by a physician or other health-care provider in regard to any complaints or problems or parts of your body similar to the complaints, problems, and parts of your body involved in this lawsuit?
 

 RESPONSE: In 2010, I slept wrong and had a muscle spasm in my left shoulder. I was seen by Dr. [Brad] Scott at Creekmore Clinic, and I have not had any other problems until the accident.
 

 INTERROGATORY NO. 8: If your answer to Interrogatory No. 8 [sic] is affirmative, for each and every such accident or medical problem, number and list the accident, medical problem, or injury, and state the date and details of the accident, the nature and type of the problem or injury, the names and addresses of any physicians, nurses, therapists, chiropractors, or other health personnel seen for treatment, the dates and duration of any period of hospitalization, the reasons or symptoms for which treatment was sought, the date and time treatment was sought, the manifestations of pain or injury which made [sic] to the physicians, nurses, therapists, chiropractors, or other health personnel, the exact type and duration of treatments given, and the effects of the treatments on the injury.
 

 RESPONSE: Dr. Scott took x-rays, but nothing showed up. He gave me pain medication and a muscle relaxer. The spasms went away and I have had no other problems until the accident.
 

 ....
 

 INTERROGATORY NO. 16: In your complaint you allege that you "sustained serious physical injuries" and "have undergone serious and continuous medical treatment for the injuries" as a result of the accident. State each and every fact on which you base this allegation and, for each and every such fact, state the name, residence address, residence telephone number, business address, and business telephone number of any and all persons who have knowledge of the fact.
 

 RESPONSE: I suffered a torn right rotator cuff injury which has required surgery. [There] is also a possible tear to my left rotator cuff.
 

 ¶ 12. Shannon then testified to the following in her deposition:
 

 Q. Tell me what kind of injuries you sustained in the accident?
 

 A. I tore my right rotator cuff, and I had to have surgery to repair it twice. And I've had from July 22nd to almost Christmas, three days a week of physical therapy.
 

 Q. I asked you in Interrogatory No. 7 had you had any other accident or any kind of medical problems associated with the body that was-parts of your body that were hurt in the accident. And you said, "In 2010, I slept wrong and had a muscle spasm in my left shoulder."
 

 A. Yes, ma'am.
 

 Q. Did he-did he-I think you told-in another answer, you told me he gave you, like, a muscle relaxer?
 

 A. Yes, ma'am.
 

 Q. And what else did he give you?
 

 A. That was probably it, and maybe a pain-you know, a couple of pain pills, but that was it.
 

 Q. And so that's the only injury you had sustained to either one of your shoulders before the accident.
 

 A. Yes, ma'am.
 

 Q. And you have never seen a physician about the shoulders before.
 

 A. No, ma'am.
 

 ....
 

 Q. And you hadn't fallen and hurt your shoulder or-
 

 A. No.
 

 Q. -thrown a bale of hay and, you know, popped your shoulder or anything like that?
 

 A. No, ma'am. I'm not-I'm not into manual labor, so no, ma'am.
 

 Q. And you've not gotten any other prescriptions other than that in 2010 for your shoulder.
 

 A. I've been on anxiety medicine and sleeping medicine.
 

 Q. No. I mean for pain in your shoulders.
 

 A. No, ma'am. No, ma'am.
 

 ....
 

 Q. Here's your-you said when your left shoulder-you slept wrong, and he did prescribe you muscle relaxers, but that's the only medication you've received for shoulder pain?
 

 A. That I can recall of.
 

 ....
 

 Q. Prior to the accident, had you had any [x]-rays or MRIs or any kind of diagnostic procedures on either one of your shoulders?
 

 A. I don't recall prior to the accident.
 

 ¶ 13. To support the motion to dismiss, the defendants argued that Shannon's actual pre-existing medical history was "contrary" to her interrogatory answers and deposition testimony. The defendants contend that Shannon's medical records show that she complained numerous times to her physicians about pain in both of her shoulders prior to the accident at issue and that, prior to the accident, she had x-rays of her shoulders and had received numerous prescriptions for shoulder pain. They cite the following medical records:
 

 2/1/10-Mrs. Westfall sought treatment at Creekmore Clinic for an "injury to her left shoulder that occurred several days ago." According to this medical record:
 

 The patient was wrestling and was injured. The patient cannot describe the mechanism of injury only stating
 there was immediate pain in the left shoulder. The discomfort is moderate to severe in intensity and has an aching quality. It does not radiate. She also injured her right thumb.
 

 Her physician diagnosed her with a "Shoulder Contusion," ordered two x-rays of the shoulder, and prescribed her Darvocet-N and Flexeril.
 

 9/9/10-Mrs. Westfall sought treatment at North Mississippi Medical Center, where the [e]mergency[-r]oom [p]hysician diagnosed her with lower[-]back pain and left joint and shoulder pain. She was prescribed a Medrol Dose Pack and Flexeril.
 

 10/3/12-Mrs. Westfall sought treatment at North Mississippi Medical Center, complaining of back, neck, and left shoulder pain that she had been experiencing ever since she suffered a fall on September 4, 2012. She also complained of right shoulder pain, experienced tenderness in the AC joint of her right shoulder, and received an x-ray of the right shoulder. She was prescribed Lortab, Muscle Relax Robaxin.
 

 2/25/13-Mrs. Westfall sought treatment at Acute Care & Family Clinic of Pontotoc, complaining of, inter alia, "left shoulder pain" from an "[i]njury from 2 to 3 years ago." She was prescribed Meloxicam for pain.
 

 ¶ 14. The defendants argue that these records show that, prior to the June 3, 2013 accident at issue, Shannon only sought medical attention regarding her left shoulder on one occasion in 2010, when she had a muscle spasm after sleeping wrong. This, they contend, "is clearly false." The defendants argue that Shannon's prior medical records demonstrate that she actually sought medical attention for pain in her left shoulder on at least four occasions within just four years preceding the accident. They also argue that these medical records indicate that her testimony that, prior to the accident, she had received prescription medications for shoulder pain on only one occasion in 2010 "also is clearly false."
 

 ¶ 15. The defendants then offer the following pre-accident medical records about Shannon's right shoulder:
 

 3/4/11-Mrs. Westfall sought treatment at North Mississippi Medical Center with complaints of pain in her right shoulder (and other areas of her body) following a fall from the steps of her deck.
 

 8/18/11-Mrs. Westfall sought treatment at Pontotoc Hospital for "throbbing pain" in her right neck and right shoulder after she felt a "pop when putting clothes in [the] dryer." She was prescribed Lortab.
 

 10/3/12-As noted above, Mrs. Westfall sought treatment at North Mississippi Medical Center, complaining of back, neck, and left shoulder pain ever since she experienced a fall on September 4, 2012. She also complained of right shoulder pain, experienced tenderness in the AC joint of her right shoulder, and received an x-ray of the right shoulder. She was prescribed Lortab, Muscle Relax Robaxin.
 

 From this, the defendants argue that Shannon's testimony that, prior to the accident, she never sought medical attention regarding her right shoulder "is clearly false." Her prior medical records demonstrate that she actually sought medical attention for pain in her right shoulder on at least three separate occasions within just the three years preceding the accident.
 

 ¶ 16. In response to the allegations of false statements, Shannon argues that none of these injuries were related to the injury caused by the accident and for
 which she sued for damages. There was no doubt that Shannon was injured in the accident. She had not had a torn rotator cuff before the accident and did have a torn rotator cuff after the accident. She also asserted that each of these purported medical issues was simply diagnosed as a bruise.
 

 ¶ 17. The defendants contend that this case is more like
 
 Scoggins
 
 . In
 
 Scoggins
 
 , Mildred Scoggins lied about a previous surgery, thirty-five visits to a doctor, and a myelogram for lower-back pain, which the court described as an unusually painful test that involves a needle being inserted into the patient's spine to inject dye.
 
 Scoggins,
 

 743 So.2d at 993
 
 (¶ 14).
 

 ¶ 18. We disagree. The defendants allege that Shannon "lied" because she did not specifically identify injuries that occurred to other parts of her body, which were not related to this injury. It is important to note that all of this information was obtained from her medical provider, Dr. Scott at Creekmore Clinic, whom she readily identified. Shannon provided a medical authorization,
 
 [1]
 
 and the defendants obtained the complete medical records of Dr. Scott and became aware of the fact that Shannon had been treated by Dr. Scott for other problems, including shoulder issues, that Shannon contends were not related to the injuries or damages from the accident in question. There is simply no comparison between Shannon's discovery answers and those in
 
 Scoggins
 
 .
 

 ¶ 19. When we compare the facts here to the earlier cases, we conclude that Shannon "did not blatantly lie about the existence of a witness, as did the plaintiff in
 
 Pierce
 
 , nor did [s]he completely misrepresent years of medical history and procedures, as did the plaintiff in
 
 Scoggins
 
 , nor did [s]he hide any other surgeries, as did the plaintiff in
 
 Ashmore
 
 ."
 
 Kinzie
 
 ,
 
 164 So.3d at 978
 
 (¶ 11).
 

 ¶ 20. The record indicates that there was some confusion between the injuries to her left and right shoulders. But, this confusion does not lead to the conclusion that Shannon made intentional and deceitful misrepresentations. We simply do not find evidence to support the conclusion that Shannon intentionally misled or blatantly lied in her discovery responses. Unlike in
 
 Pierce
 
 , Shannon's interrogatory responses and the reasonably expected discovery efforts of the defendants led to the medical records that may contradict Shannon's interrogatory responses or deposition testimony. Certainly, the medical records may be offered to attack Shannon's credibility at trial and to accurately present evidence of Shannon's prior medical history and condition. Under these circumstances, a lesser sanction of attorney's fees and costs associated with obtaining the medical records would have been an appropriate sanction, if any. Dismissal is certainly not.
 

 ¶ 21. Anytime a defendant asks for dismissal of the action for a discovery violation, the trial judge and this Court must begin with the important admonition in
 
 Pierce
 
 -dismissal is appropriate "only under
 
 the most extreme circumstances
 
 " and only where lesser sanctions will not suffice.
 

 Pierce,
 

 688 So.2d at 1388-89
 
 (emphasis added). This is simply not an extreme case.
 

 ¶ 22. Therefore, we find a definite and firm conviction that the circuit judge committed a clear error of judgment in the dismissal of this action. Because of this finding, the remaining issues are moot and will not be addressed. For the reasons set forth above, we reverse the judgment of dismissal and remand this case to the circuit court for further proceedings consistent with this opinion.
 

 ¶ 23.
 
 REVERSED AND REMANDED.
 

 LEE, C.J., FAIR AND WILSON, JJ., CONCUR. GREENLEE AND WESTBROOKS, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES AND CARLTON, JJ.; GREENLEE AND WESTBROOKS, JJ., JOIN IN PART.
 

 We recognize that this Court, in
 
 Conklin v. Boyd Gaming Corp.
 
 ,
 
 75 So.3d 589
 
 , 595 (¶ 16) (Miss. Ct. App. 2011), held that submitting medical releases does not remedy repeatedly providing false answers during discovery. Shannon does not make this argument. However, it is important that Shannon's provision of medical authorization to the defendants in discovery does weigh against a finding that Shannon made an intentional misrepresentation or blatantly lied about her medical history. In fact, the medical authorizations gave the defendants access to the original source of records and subjected her to possible impeachment or an attack on her credibility.