# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00565-SCT

*MARY EDWARDS*

*v.*

*COCA COLA BOTTLING COMPANY UNITED, INC., AND WILLIE LEE, JR.*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| TRIAL COURT ATTORNEYS: | GEORGE W. HEALY, IV |
| | WILBUR PEMBLE DELASHMET |
| | ROY A. NOWELL, JR. |
| | MATTHEW JOSEPH O'GORMAN |
| | J. HEATH SULLIVAN |
| | JACOB D. KING |
| | VICKI R. LEGGETT |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY |
| ATTORNEYS FOR APPELLANT: | J. HEATH SULLIVAN |
| | JACOB D. KING |
| ATTORNEY FOR APPELLEES: | VICKI R. LEGGETT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 03/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE KITCHENS AND KING, P.JJ., AND BEAM, J.

### KITCHENS, PRESIDING JUSTICE, FOR THE COURT:

¶1.    Mary Edwards sued Coca-Cola Bottling Company United, Inc. (Coca-Cola), and

Willie Lee, Jr., for back injuries sustained when, while shopping at Wal-Mart, she was struck

by a cart driven by Lee as he stocked shelves with soft drinks.  The Circuit Court of the First

Judicial District of Harrison County dismissed Edwards's lawsuit with prejudice after finding

that she had misrepresented her injuries during discovery. Edwards appeals, arguing that her failure to disclose prior back problems in her discovery responses either did not amount to a discovery violation or that such failure merited a sanction less severe than dismissal. Edwards also argues that, because no genuine issue of material fact existed about whether Lee's breach of the duty of care proximately caused her injuries, the trial court erred by denying her motion for summary judgment on liability. Because the trial court was within its discretion in dismissing Edwards's case on the basis of her discovery violation, we affirm.

**FACTS**

¶2.     Edwards filed a complaint against Coca-Cola and Wal-Mart Stores, Inc., alleging that, on August 31, 2013, she had been struck by a cart operated by a Coca-Cola vendor, Willie Lee, Jr., as he stocked shelves. Later, Edwards filed a first amended complaint, adding Lee as a defendant. In its answer Coca-Cola admitted that it was responsible for Lee's actions taken in the course and scope of his employment, but it denied any negligence. Thereafter, Wal-Mart was dismissed from the action.

¶3.     Edwards described the accident in her deposition. She testified that, while shopping at Wal-Mart with family members, she squatted down to look at baby food on a low shelf, and a cart struck her in the right hip, causing her to fall. When she righted herself and attempted to stand, the cart struck her a second time, also in the right hip. She testified that she had not seen the cart prior to the accident. Edwards testified that she felt pain in her hip immediately, and the pain spread to her lower back. She testified that Lee had been wearing earbuds and had failed to notice that he had struck someone with his cart. She said that the

2

accident had caused injuries to her middle and lower back. Edwards visited an emergency room after leaving Wal-Mart.

¶4. In his deposition, Lee testified that he was using a U-boat cart to stock shelves on an aisle in Wal-Mart. He testified that a U-boat cart is a six-wheeled cart controlled by the driver's arms using vertical handles. Lee testified that when he rotated the cart to get it out of the way of customer traffic, he could feel that the cart had bumped someone. Although he was aware that he had struck someone, Lee continued stocking shelves because he did not believe that the collision had been a big one. He admitted that, before rotating the cart, he had failed to look near the baby food aisle to see whether anyone was in the way. He denied that he had been wearing earbuds.

¶5. Edwards's treating physician, Dr. Richard Gorman, testified in deposition that, to a reasonable degree of medical probability, the accident had caused Edwards to suffer an annular tear in the lower back at L-5, S-1, and a disc protrusion in the middle back at T-7.The defendants submitted a supplemental interrogatory answer with the opinion of Dr. Eric Wolfson, a neurosurgeon, that Edwards had sustained a lumbar muscular strain in the accident that should have resolved in six to twelve weeks. He opined that the disc problems identified by Dr. Gorman were due to degenerative disc disease, not trauma. Dr. Wolfson reached these conclusions based on the records of Edwards's emergency room visit the day of the accident, which documented that a full examination of her back revealed a full range of motion, no midline tenderness, no muscle spasm, no trauma to the back, and a negative straight-leg raise test.

¶6.     While discovery was ongoing, Coca-Cola and Lee filed a motion to dismiss on the basis of discovery violations by Edwards. Coca-Cola alleged that Edwards's interrogatory responses and deposition testimony about her medical history conflicted with her medical records. In her interrogatory answers, Edwards had said that, while she suffers from multiple sclerosis for which she had been placed on Social Security disability, she never had experienced injuries similar to those she sustained in the Wal-Mart accident. She did reveal a workers' compensation claim for a broken rotator cuff between 1999 and 2001. She said that due to the back injuries from the accident, she has trouble with household chores, she cannot lift her small grandchildren, and she cannot fish with her son.  These limitations, according to Edwards, have caused her debilitating mental and emotional stress. She filed a second supplemental answer to interrogatories that updated her initial interrogatory response in which she had denied any similar injuries before the accident. In the second supplemental answer, Edwards said she had seen a chiropractor in 2004 for her hip.

¶7.     During Edwards's deposition, defense counsel reminded her that she could consult her attorney at any time and that "I don't know" and "I don't remember" were acceptable answers. Edwards testified in deposition that since the accident at Wal-Mart, she suffered with middle and lower back pain. She testified that, before the accident, she never had any problems with her middle back. She said she never had sought medical care for pain or limitations in motion in her middle back before the accident. She also said she had not seen a medical provider for any complaints of middle back pain before the accident. Regarding her lower back, Edwards said she had seen a chiropractor for "a twisted pelvic" in 2004, but

4

otherwise had seen no medical providers for any problem with her lower back before the accident. She denied ever having had any problems or complaints of pain or limitation of motion regarding her lower back before the accident. And she denied having sought medical care or treatment for any lower back problems before the accident. She testified that, before August 2013, she had "never really had a back problem." And she said that, before the accident, no one had ever told her she had disc problems in her back.

¶8.    Edwards signed a medical authorization that allowed Coca-Cola access to her medical records. Several of those medical records, summarized below, showed that, in fact, Edwards had a history of problems with her middle and lower back.

- On April 3, 2005, Edwards presented to the UrgiCare Center with fever, congestion, and back pain that she had been experiencing for three days.

- A November 1, 2005, record from the Patterson Medical & Diagnostic Center noted a history of bulging discs in Edwards's neck and back.

- In a January 8, 2007, record from Logan Family Practice, Edwards complained of neck pain that radiated to her middle back.

- On February 21, 2007, Edwards visited Logan again complaining of middle back pain, among other complaints.

- On May 30, 2007, Edwards was treated at Logan for pain in her left hip radiating into her back and low back pain. An examination revealed "[n]o pain in lower back; does have pain over the left hip." She was diagnosed with bursitis in the hip and degenerative joint disease in the neck.

- In another Logan record from June 8, 2007, Edwards complained of back pain and hip pain.

5

- In records from Northcrest Medical Center on September 26, 2007, Edwards complained that she had seen "Dr. Anderson yesterday and he was going down my spine and pushing and I guess he hit something. My back hurts." Her pain assessment was 8, and she described the pain as located in her middle back. Another note from that visit indicates that Edwards said she has three bulging discs in her back and two in her neck for which she was seeing a different neurologist in another state. The clinic prescribed painkillers for Edwards's back pain.

- On October 15, 2007, Edwards saw Dr. W. Lewis, who reported her history as multiple sclerosis and back pain that Edwards described as inadequately controlled and aggravated by degenerative disc disease. On examination, "[i]t is tender to palpate the lower back in all areas."

- On November 1, 2007, Edwards returned to Northcrest reporting that, after falling on a sloped embankment, her left knee and back were sore. The record notes a history of degenerative disc disease and a disc herniation. She underwent an X-ray of the lumbar spine.

- Northcrest records from January 7, 2008, February 9, 2008, and February 17, 2008, note a medical history of multiple sclerosis and back pain.

- Medical records from Memorial Hospital show Edwards presented complaining of back pain in addition to neck pain and headache.

¶9.    Coca-Cola questioned Dr. Gorman about these medical records in his deposition. Dr. Gorman testified that he had treated Edwards for multiple sclerosis from 2005 to the present, and she never had reported any middle or lower back problems before the accident. He first examined Edwards for her injuries from the accident on November 11, 2013. He said that, after the accident, Edwards had problems bending, stooping, and walking, but that she had experienced difficulty with these activities before the accident due to her multiple sclerosis. Dr. Gorman minimized the significance of the back problems noted in Edwards's pre-

accident records because none showed radicular symptoms or symptoms that had persisted long enough to prompt any provider to order an MRI scan or to recommend surgery.

¶10. Edwards filed a reply to the motion to dismiss, contending that she had not wilfully or intentionally violated discovery rules. She maintained that, at worst, she had failed to remember minor medical treatment for her back from nearly a decade before her discovery responses. To show that she had lacked intent to obfuscate her medical history, she pointed to her execution of a medical authorization allowing the defendants full access to her medical records. Also, she averred that, after her deposition, she had changed attorneys. Edwards noted that, during Dr. Gorman's deposition, her former counsel, who had been representing her at that time, said he did not have a copy of her medical records at the deposition. She argued her lawyer's statement showed that he never brought the medical records to her attention to refresh her recollection before the deposition.

¶11. Edwards also filed a motion for summary judgment on liability, arguing that no genuine issue of material fact existed that Coca-Cola and Lee had breached a duty owed her and that the breach of duty was the proximate cause of her injuries. The defendants responded, arguing that genuine issues of material fact existed due to the discrepancies in the testimony of Edwards and Lee about how the accident occurred, as well as a grainy video that purported to depict the accident.[1] Edwards filed a rebuttal to the defendants' response.

¶12. After a hearing on the defendants' motion to dismiss and Edwards's summary judgment motion, the trial court granted the motion to dismiss and entered a judgment of

---

[1] We note that, because of the poor quality of the video, nothing helpful can be observed.

dismissal with prejudice under Mississippi Rule of Civil Procedure 37. The trial court found that Edwards had been directly asked in the interrogatories whether she ever had experienced a prior injury in any way similar to the injury claimed in her complaint, and that in her sworn responses, she said that she had not. And in her deposition, she repeated this testimony, denying that she ever had experienced any pain or limitations concerning her lower or middle back prior to the accident and denying that she had seen a medical provider for any problem with her middle or lower back. She also testified that no one ever had told her she had problems with a disc in her back. Later, she supplemented her interrogatory responses to include a hip injury from 2004. The trial court also noted that Edwards never had told Dr. Gorman that she had any problems with her middle or lower back before the accident. The trial court recited the myriad medical records showing that Edwards had, in fact, experienced prior middle and lower back problems for which she had received medical treatment.

¶13.    In its analysis, the trial court applied the factors from *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997), and found that Edwards's provision of false responses to interrogatories and deposition questions was "the result of willfulness and/or bad faith, and not from her alleged lack of recollection." The trial court found that Edwards's false responses were a deliberate attempt to keep evidence from the court and to hide the truth. And the trial court found that lesser sanctions than dismissal would allow Edwards to get away with lying under oath and would, therefore, not achieve the deterrent value of dismissal. Rejecting Edwards's contention that her false answers were due to lack of memory or her attorney's failure to refresh her recollection, the trial court found her answers

8

unambiguous and purely the product of dishonesty. The trial court found that her conduct substantially had prejudiced Coca-Cola and Lee and that it would force them to retake Edwards's deposition and to take other depositions. Additionally, the trial court found that Edwards's conduct necessitated an exhaustive multistate search for additional medical records, requiring Coca-Cola and Lee to spend extra time and resources in the process. The trial court found that, although dismissal with prejudice was the harshest sanction available, "no other sanction [would] meet the demands of justice." The same day, the trial court entered an order denying Edwards's motion for summary judgment. Edwards appeals both rulings.

## DISCUSSION

**I. Whether the trial court's dismissal of the action as a sanction for a discovery violation was an abuse of discretion.**

*A. Standard of Review*

¶14. This Court reviews the trial court's dismissal of an action for a discovery violation for abuse of discretion. ***Ashmore v. Miss. Auth. on Educ. Television***, 148 So. 3d 977, 981 (Miss. 2014). We begin with a determination of whether the trial court applied the correct legal standard. ***Pierce***, 688 So. 2d at 1388. If so, then we consider whether the trial court's "decision was one of several reasonable ones which could have been made." ***Id.*** We will affirm "unless there is a definite and firm conviction that the [trial] court . . . committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." ***Id.*** (quoting ***Cooper v. State Farm Fire & Cas. Co.***, 568 So. 2d 687, 692 (Miss. 1990)). This Court also has said that it "should engage in 'measured restraint in conducting appellate

9

review' and should not decide whether it would have dismissed the original action but whether dismissal amounted to clear error." ***Kinzie v. Belk Dept. Stores, L.P.***, 164 So. 3d 974, 977 (Miss. 2015).

>    B.    Discussion

¶15.    Pursuant to Mississippi Rule of Civil Procedure 37[2] and a trial court's inherent power to protect the integrity of the judicial process, trial courts have broad discretionary authority in discovery matters, including the power to dismiss an action. Miss. R. Civ. P. 37. ***Pierce***, 688 So. 2d at 1388. In the seminal case concerning false testimony given in discovery, ***Pierce***, the plaintiff had said under oath that she had been alone when a ceiling fan dropped from the ceiling onto her person, causing injuries. In her interrogatory answers, deposition testimony, and testimony at a first trial, she repeatedly maintained that she had been alone at the time of the incident. ***Id.*** at 1387. But those representations were lies. ***Id.*** at 1388. After the first trial, the defendants discovered that Pierce had not been alone at the time of the incident; rather, her boyfriend had been present. ***Id.*** The defendants moved to dismiss on the

---

[2] Rule 37(b)(2)(C) provides, in pertinent part, that

>    If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify in behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>    . . . .
>
>    an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

10

basis of the false testimony. *Id.* Pierce, in a second deposition, testified that she had not meant to deceive the court with her falsehood but that she had lied in order to hide from her parents the fact that she had an unsanctioned male overnight guest. *Id.* The trial court found that the discovery violation warranted dismissal with prejudice. *Id.*

¶16. In affirming the dismissal, this Court emphasized the importance of truthful responses to discovery. *Id.* at 1389. "An implicit condition in any order to answer an interrogatory is that the answer be true, responsive and complete. A false answer is in some ways worse than no answer; it misleads and confuses the party." *Id.* (quoting *Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 107 (D. Md. 1989)). The Court held that sanctions, including the most severe sanction of dismissal, must be available to trial courts not only to penalize, but also to deter those who might otherwise be tempted to commit similar discovery violations. *Id.* The Court held that "the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Id.* at 1388. The following considerations apply in deciding whether a trial court abused its discretion by dismissing an action with prejudice:

> First, dismissal is authorized only when the failure to comply with [discovery obligations] results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

11

*Id.* at 1389 (quoting ***Batson v. Neal Spelce Assocs., Inc.***, 765 F.2d 511, 514 (5th Cir. 1985)). "Willfulness" may be "either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations." *Id.* at 1390 (citation omitted).

¶17.    Applying these criteria, the Court found that Pierce's failure to respond truthfully was wilful and in bad faith because she admitted the truth only when confronted by the defendants. *Id.* at 1390. The Court recognized that the trial court had considered imposing the lesser sanction of allowing Pierce to be cross examined at trial about the false discovery responses. *Id.* The trial court had rejected that option because cross examination is available when a party makes an inconsistent statement. *Id.* The trial court also had declined to impose the lesser sanction of assessing Pierce with fees and costs because the fees probably would exceed any damages awarded if the case were retried. *Id.* at 1390-91. The Court found that the trial court's decision that lesser sanctions would not suffice was justified because "any other sanction beside[s] dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty" and would have insufficient deterrent effect. *Id.* at 1391. The Court found that, although the defendants had suffered no prejudice, no requirement exists that the defendants suffer substantial prejudice from the absence of evidence. *Id.* Further, the Court found that the discovery violation was attributable to Pierce, not to her attorney. *Id.* The Court found that, because substantial evidence in the record established Pierce's deception, the trial court had not abused its discretion by dismissing her case with prejudice. *Id.*

¶18.    This test from *Pierce* has been applied in numerous cases involving sanctions for discovery violations. In *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990 (Miss. 1999), this Court applied the test in affirming a dismissal for discovery violations similar to those at issue in this case. Scoggins filed a complaint alleging that she was in a grocery store when an employee struck her with a loaded dolly, injuring her foot, leg, and back. *Id.* at 991. In interrogatories, Scoggins was asked about prior injuries to the areas she claimed had been hurt in the accident. *Id.* She responded by saying that she never had injured any of the same areas but that she had a pinched nerve in her back in 1958 and had completely recovered. *Id.* She also denied having been prescribed Xanax before the accident. *Id.* at 992. Later, in her deposition, the defendants repeatedly questioned Scoggins about whether she had sustained prior foot, leg, or back injuries. *Id.* at 991. Other than the pinched nerve, Scoggins maintained she had no problems with those areas before the accident. *Id.* But medical records from Scoggins's personal physician showed that she had been examined for pain, numbness, and arthritis in her left leg, back, hip, and spine in thirty-five visits from 1976 through January 1994, two months before the March 1994 accident. *Id.* at 992. Scoggins also had undergone a lumbar omnipaque myelogram in 1991 for lower back and leg pain. *Id.* Additionally, she had been treated with Xanax from June 1993 through January 1994. *Id.*

¶19.    The defendants moved to dismiss based on Scoggins's perjured testimony in her discovery responses. *Id.* In response, Scoggins claimed that she had failed to remember her complete medical history. *Id.* On appeal, Scoggins argued that the trial court had abused its discretion by not imposing a lesser sanction. *Id.* at 995. But this Court found that the trial

court had not abused its discretion by dismissing the case. *Id.* at 997. The Court found that, because the trial court is the judge of witness credibility, and because of the evidence of Scoggins's deception, determining that Scoggins had misrepresented the truth wilfully and in bad faith was within the trial court's discretion. *Id.* at 995. And the Court found that the trial court had considered lesser sanctions by describing the possible effects of less drastic sanctions and finding that no other sanction was appropriate. *Id.* at 997. The Court noted the trial court's finding that the defendants had been prejudiced substantially by Scoggins's actions. *Id.* And no evidence existed that Scoggins's attorney had been at fault. *Id.* Further, because Scoggins had obscured only the relevant portions of her medical history, no evidence lent any credibility to her claim of confusion and memory loss. *Id.* The Court found that, although "[d]ismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice," the trial court was within its discretion in finding that Scoggins's wilful submission of false answers to interrogatories and false testimony in her deposition warranted dismissal. *Id.*

¶20.     In other similar cases, this Court likewise has found that deceptive conduct in discovery warranted the extreme sanction of dismissal under the test from *Pierce*. In *Allen v. National Railroad Passenger Corp.*, 934 So. 2d 1006 (Miss. 2006), the plaintiff, who had instituted a lawsuit to recover for a back injury, was found to have lied in sworn discovery responses about having suffered a prior back injury and having filed a workers' compensation claim. *Id.* at 1008. His medical records revealed that he had suffered prior

14

injuries to his lower back in the same location he claimed had been injured in the accident. *Id.* Allen said he had forgotten the prior injury and treatment. *Id.* at 1009. The Court found that Allen's misconduct was not a single untruthful response, but repeated failures to disclose the prior injury, and that the trial court had not abused its discretion by dismissing the action after weighing the factors from *Pierce*. *Id.* at 1012.

¶21. In *Ashmore v. Mississippi Authority on Educational Television*, David Ashmore claimed injuries to his right and left knees, back, neck, and upper arms, and his wife asserted a loss of consortium claim. *Ashmore*, 148 So. 3d at 979. The plaintiffs' interrogatory responses omitted David Ashmore's prior back injury, prior injuries to his right and left knees, and a subsequent injury to his left leg. *Id.* And the wife had failed to disclose that she was seeking similar damages in an unrelated case. *Id.* at 980. This Court found no abuse of discretion in the trial court's dismissal of the action; the trial court had found a pattern of wilful misrepresentations that subverted the judicial process. The court rejected lesser sanctions, found that the defendants had incurred "major inconvenience in time, attorney fees, and general frustration," and found that the Ashmores, not their counsel, were responsible for the false discovery responses. *Id.* at 984-85.

¶22. Edwards cites *Kinzie v. Belk Department Stores, L.P.*, in which the Court held that the trial court had abused its discretion by dismissing an action based on discovery violations. *Kinzie*, 164 So. 3d at 979-80. Kinzie sued his employer after he injured his back while unloading a truck. *Id.* at 975. Kinzie gave a sworn interrogatory answer stating that, since the accident, he had been

15

> [un]able to cut grass or take care of the lawn, unable to perform house cleaning, [un]able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, [unable to] lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities as before the incident.

*Id.* at 976. Belk hired a private investigator who performed surveillance of Kinzie and provided video footage showing Kinzie driving, walking to the post office and to his attorney's office, and working with another man on a shed in his backyard. *Id.* In his response, Kinzie asserted that none of those activities had violated his doctor's restrictions and that he had performed no task that he had said in discovery responses he could not perform. *Id.* The trial court found that he had made false assertions in discovery responses and dismissed his action with prejudice. *Id.* at 977.

¶23. This Court granted *certiorari* to clarify that Kinzie's discovery violation warranted lesser sanctions than dismissal. *Id.* at 977. The Court emphasized that dismissal is reserved only for those cases presenting the most extreme circumstances. *Id.* (citing *Pierce*, 688 So. 2d at 1388). Unlike in *Pierce*, in which the plaintiff had "flat-out lied under oath" about the presence of a witness to the accident, the Court found that Kinzie's discovery response was open to multiple interpretations. *Id.* The Court held that, "where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal." *Id.* at 978.

¶24. The Court reviewed ***Wood ex rel. Wood v. Biloxi Public School District***, 757 So. 2d 190 (Miss. 2000), in which the plaintiff had reported the following in his interrogatory answer: "I no longer am able to enjoy tinkering with automobiles as the stooping, bending,

16

and squatting are painful." *Id.* at 193. The defendants provided surveillance footage of the plaintiff engaging in those activities. *Id.* The Court found that dismissal was not warranted because the single, ambiguously worded discovery response indicated the plaintiff still could perform the listed tasks, just with less enjoyment than before. *Id.* at 194. Thus the defendants had not established that the plaintiff had made false statements in discovery, and no pattern of false responses had existed. *Id.*

¶25.    *Kinzie* found the discovery violation at issue to be akin to the one in *Wood*, rather than to the ones in *Pierce*, *Scoggins*, or *Ashmore*. *Kinzie* said that

> Kinzie did not blatantly lie about the existence of a witness, as did the plaintiff in *Pierce*, nor did he completely misrepresent years of medical history and procedures, as did the plaintiff in *Scoggins*, nor did he hide any other surgeries, as did the plaintiff in *Ashmore*. The Court finds no "total lack of congruence" between Kinzie's responses and his medical records, as the trial court found in *Scoggins*. Nor do we find this to be "the paradigm situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony" as this Court found in *Pierce*.

*Kinzie*, 164 So. 3d at 979 (citations omitted). *Kinzie* also found that, although the trial court had found that Kinzie's response was false, "the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of *pattern* of misleading or false responses." *Id.* Because the discovery violation was not extreme, the trial court should have imposed a lesser sanction. *Id.*

¶26.    After *Kinzie*, this Court decided *May v. Austin*, 240 So. 3d 389 (Miss. 2018). In his lawsuit, May claimed that a car accident had caused injuries to his neck, lower back, and right shoulder. *Id.* at 390. In interrogatory responses, he consistently denied any prior injuries

17

or medical treatment to his neck, lower back, and right shoulder. *Id.* at 391. But the defendants obtained medical records by subpoena showing that he had sustained prior significant injuries to his neck and back and had been treated for his right shoulder just four months before the accident. *Id.* The defendants filed a motion to dismiss that initially was denied by the trial court on the ground that May had signed a medical authorization, which was "slightly indicative of a lack of motive to engage in a pattern of deception." *Id.* But on reconsideration, the trial court granted the motion to dismiss on the basis of May's unequivocal denials of any prior injuries to the same areas and because, as it turned out, May had not executed a medical authorization, which negated the trial court's initial reason for denying the motion to dismiss. *Id.* at 393. Applying the test from *Pierce* and the precedent discussed above, this Court found that the trial court had not abused its discretion by dismissing the action based on May's false responses in discovery. *Id.* at 398-99.

¶27. Citing *Kinzie*, Edwards argues that, because her only fault was failing to recall minor medical treatment from nearly a decade before her discovery responses, the trial court erred by imposing any sanction or, at the most, it should have imposed a lesser sanction than dismissal. She also argues that, because she did execute a medical authorization, her case is distinguishable from *May*. Edwards also cites two cases from the Court of Appeals, *Westfall v. Goggins*, 247 So. 3d 244 (Miss. Ct. App. 2017), and *Bowdry v. T. Mart*, 240 So. 3d 489 (Miss. Ct. App. 2018), in which the Court of Appeals reversed dismissals based on discovery violations consisting of inconsistencies between medical records and discovery responses.

¶28. Our review is limited to whether the dismissal amounted to clear error, not whether we would have dismissed the original action. *Kinzie*, 164 So. 3d at 977. Although this is a close case, a faithful application of our standard of review yields the conclusion that the trial court did not abuse its discretion by imposing the ultimate sanction of dismissal with prejudice. As an initial matter, the trial court was within its discretion in finding that Edwards's false discovery responses were the products of wilfulness and bad faith rather than an inability to comply. While Edwards claimed that she had been unable to recall her medical history, the medical records unearthed by Coca-Cola and Lee reveal an established history of middle and lower back problems. She presented to medical providers on several occasions with complaints of back pain. Most notably, at her visit to Northcrest Medical Center on September 26, 2007, Edwards reported that her back had been injured when another physician had pushed on her spine. During that visit, she reported that she had three bulging discs in her back for which she was being treated by a neurologist in another state. The next month, she was diagnosed with degenerative disc disease. The month after that, she visited Northcrest again, reporting that she had injured her back in a fall. Multiple medical records note a history of back pain, including pain in her middle and lower back pain. Those records directly contradicted Edwards's numerous assertions in her sworn interrogatory responses and deposition testimony that she had no prior middle or lower back problems and that she never had seen a medical provider for such problems.

¶29. Edwards contends that she should not have been expected to remember medical conditions and treatment from almost ten years before her deposition testimony. But this

19

contention is belied by her submission of a supplemental interrogatory answer reporting that, the year before the medical records at issue, she had seen a chiropractor for her hip. Further, unlike in *Kinzie*, Edwards submitted a pattern of answers that directly contradicted her medical records concerning her prior injury. This case was not dismissed because of "one ambiguously worded response to one interrogatory question." *Kinzie*, 164 So. 3d at 978 (citing *Wood*, 757 So. 2d at 194). Rather, Edwards "completely misrepresent[ed] years of medical history and procedures." *Kinzie*, 164 So. 3d at 979. The trial court found that she "very succinctly and definitively lied under oath" about never having had any prior treatment for her middle or lower back. It was within the trial court's discretion to find that Edwards's explanation for the discrepancy between her sworn answers and her medical records was incredible and that this was, indeed, "the paradigm situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony." *Id.*

¶30.    Edwards's execution of a medical authorization to permit the defendants access to her medical records avails her nothing. The evidence of the medical authorization was before the trial court. But that court in reaching its carefully considered and well-articulated conclusion did not weigh it in favor of Edwards. Despite the medical authorization, as the trial court reasoned, the defendants had not discovered all pertinent medical records concerning Edwards's prior back treatment. Although this Court in *May* recognized that the trial court in that case had found that the plaintiff's execution of a medical authorization indicated an

20

absence of a motive to engage in deception, this Court has not held that a trial court is required so to find in every case involving false discovery responses.

¶31. Second, the trial court did consider, but decided against, the imposition of lesser sanctions for Edwards's wilful misrepresentations, finding that a lesser sanction would not accomplish the deterrent value of dismissal because any lesser sanction would permit Edwards to get away with having lied under oath. Edwards argues that this Court should follow the Court of Appeals's decisions in *Westfall* and *Bowdry* and find dismissal too severe a penalty. But in *Westfall*, the Court of Appeals found that the plaintiff's denial of a previous similar injury had been mitigated by confusion between injuries to her right and left shoulders, her identification of her treating physician in her interrogatory answers, and her execution of a medical authorization. *Westfall*, 247 So. 3d at 252. And in *Bowdry*, although in his deposition the plaintiff had denied prior treatment for his neck and lower back, his interrogatory responses led to the disclosure of the contradictory medical records, a fact which the Court of Appeals found to have been mitigating. *Bowdry*, 240 So. 3d at 496. Both *Westfall* and *Bowdry*, while worthy of our consideration, were decided by the Court of Appeals and are not binding on this Court. Further, in *May*, this Court again affirmed a dismissal based on misconduct similar to that in this case. *May*, 240 So. 3d at 398-99. The facts of the present case are substantially similar to those in *Scoggins*, in which this Court affirmed the trial court's finding that lesser sanctions than dismissal were inadequate. We hold that, under the particular circumstances of this case, the trial court was within its discretion in finding that no sanction less than dismissal would serve the interests of justice.

¶32.    The trial court also considered whether Coca-Cola's and Lee's preparation for trial had been prejudiced substantially by Edwards's misrepresentations. Although this Court has held that no finding of substantial prejudice is required for dismissal, here, the trial court found that the defendants' trial preparation had been prejudiced substantially. The trial court found that, due to Edwards's deception, the defendants would need to retake her deposition, possibly take others' depositions, and undertake an exhaustive, multistate search for additional medical records. This would result in the defendants' expenditure of more time and resources than is customary to find this information. We find that the trial court was within its discretion in finding that the defendants' trial preparation had been prejudiced substantially, and that court's finding on this factor supports its ultimate conclusion that the case should be dismissed in the interests of justice.

¶33.    Finally, the trial court found "most troublesome" that the neglect was attributable to Edwards, not to her counsel. The trial court rejected Edwards's attempt to blame her former counsel for not bringing the medical records to her attention, finding that Edwards's conduct was attributable solely to her dishonesty. The trial court observed that Edwards had numerous opportunities to correct any confusion or misunderstanding but that she had declined to do so.

¶34.    The trial court thoroughly and "properly analyzed [Edwards's] discovery violations, applied appropriate weight to each misrepresentation, and arrived at a justifiable conclusion." *May*, 240 So. 3d at 398. Edwards's submission of numerous sworn discovery responses that directly contradicted her medical records concerning prior medical treatment of her back, the

22

same area she alleged had been injured in the accident, was akin to the misconduct that warranted dismissal in *Scoggins*. Although in *Scoggins* the prior treatment was less remote in time than in this case, the trial court's decision was among the reasonable decisions that could have been made based on the evidence. Therefore, the trial court did not abuse its discretion by dismissing Edwards's case. Because we affirm the dismissal of Edwards's suit based on her discovery violation, the issue of summary judgment is moot and will not be addressed.

## CONCLUSION

¶35.    We find that the trial court properly considered the factors from *Pierce v. Heritage Properties* and that it acted within its discretion in dismissing this case with prejudice.

¶36.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**