# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01414-COA

DARLENE MUBARAK                                                          APPELLANT

v.

BETHANY H. SULLIVAN                                                      APPELLEE

DATE OF JUDGMENT:            09/07/2018
TRIAL JUDGE:                 HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:   FORREST COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     PAUL MANION ANDERSON
                             SAMUEL STEVEN McHARD
ATTORNEY FOR APPELLEE:       HERMAN M. HOLLENSED JR.
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 AFFIRMED - 05/12/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.

### TINDELL, J., FOR THE COURT:

¶1.    Darlene Mubarak sued Bethany Sullivan for injuries Mubarak allegedly suffered during an automobile collision. After finding that Mubarak had committed a discovery violation, the Forrest County Circuit Court dismissed with prejudice her claims against Sullivan. On appeal, Mubarak argues the circuit court abused its discretion. Finding no error, we affirm the circuit court's judgment dismissing Mubarak's claims with prejudice.

## FACTS

¶2.    On December 18, 2012, Sullivan rear-ended Mubarak's vehicle while Mubarak was stopped at a traffic light. Mubarak's mother, Dalmira Mubarak, was a passenger in

Mubarak's vehicle at the time of the collision. On March 19, 2015, Mubarak and Dalmira filed a complaint against (1) Sullivan, (2) the owner of the vehicle Sullivan had operated, and (3) John Does 1-5. Mubarak and Dalmira sought "special, punitive, and compensatory damages" for injuries they claimed they had sustained during the collision.

¶3. By an agreed order stamped as filed on March 22, 2016, the circuit court found that all Mubarak's and Dalmira's claims had been settled against the owner of the vehicle that Sullivan had operated at the time of the collision. The circuit court therefore granted the parties' joint motion to dismiss with prejudice the claims against the vehicle's owner. The circuit court noted, however, that all Mubarak's and Dalmira's claims against Sullivan remained unaffected by the order.

¶4. On June 23, 2016, Sullivan filed a motion to dismiss with prejudice Mubarak's claims against her. Sullivan contended that Mubarak had willfully and in bad faith concealed relevant information during her September 29, 2015 deposition. According to Sullivan, contrary to Mubarak's sworn deposition testimony, Mubarak's medical and pharmacy records revealed that Mubarak "had a history of neck and back pain prior to the subject accident[] and that she had been treated and prescribed narcotic pain medication and other medication for those conditions before the accident, as well as the anti-anxiety medication, Xanax." Sullivan contended that Mubarak had even seen her treating physician, Dr. Dorothy Gillespie, for her complaints less than one month before the subject accident. Based on Mubarak's failure to disclose any of this information during her deposition, Sullivan moved

2

for the dismissal of Mubarak's claims with prejudice pursuant to Mississippi Rule of Civil Procedure 37(b)(2)(C).[1]

¶5.    On March 21, 2017, the circuit court entered a judgment granting Sullivan's motion to dismiss Mubarak's claims with prejudice pursuant to Rule 37(b)(2)(C).  The circuit court found that Mubarak had provided copies of only certain medical records during discovery. Mubarak's complete medical records indicated that Mubarak had visited Dr. Gillespie on December 16, 2011, and that in 2012, prior to the collision, she had visited Dr. Gillespie on January 18, August 21, and November 15.  The circuit court found that at each of these visits with Dr. Gillespie Mubarak had "complained of neck and/or back pain, and medications were prescribed."  Mubarak's pharmacy records indicated that she filled prescriptions for Lortab, Xanax, and Soma on January 20, 2012, September 17, 2012, and November 20, 2012.

¶6.    With regard to Mubarak's deposition testimony on September 29, 2015, the circuit court found as follows:

---

[1] In relevant part, Rule 37(b)(2)(C) states:

If a party . . . fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C)    an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

Contrary to her medical records, . . . [Mubarak] testified that prior to the accident she had never been to any doctor for lower back problems, she could think of no time other than postpartum that she may have taken medicine for depression or anxiety, she took prescription pain medications after she had a baby and maybe when she had pneumonia, she had never taken muscle relaxers, and . . . if she had neck pain, it was with the flu or from stress headaches. [Mubarak] also testified that she had been to see Dr. Gillespie before the accident for various ailments but that she had never gone to any doctor for neck or back pain. Given her medical records, [Mubarak] testified falsely about her preexisting medical conditions and their treatment—including [treatment she received] a little more than a month prior to the accident.

(Footnote omitted). Citing several Mississippi appellate opinions, the circuit court concluded that Mubarak's provision of deposition testimony that directly contradicted the medical and pharmacy records about her preexisting conditions and/or treatment justified the dismissal of her claims as an appropriate discovery sanction. The circuit court therefore granted Sullivan's motion to dismiss.

¶7.     On September 4, 2018, the parties filed a "Stipulation of Dismissal with Prejudice," stating that Dalmira and the defendants had reached a settlement that fully and finally settled all the claims between them. The parties therefore asked that the circuit court dismiss Dalmira's civil action with prejudice to allow Mubarak to appeal the ruling dismissing her claims against Sullivan. On September 7, 2018, the circuit court entered an order finding that the agreed stipulation was appropriate and meritorious and that Mubarak's and Dalmira's claims had all been decided. The circuit court therefore dismissed Dalmira's civil action with prejudice, and Mubarak filed a notice of appeal regarding the dismissal of her claims.

**STANDARD OF REVIEW**

4

¶8.     As the Mississippi Supreme Court recently explained:

> This Court reviews the trial court's dismissal of an action for a discovery violation for abuse of discretion. We begin with a determination of whether the trial court applied the correct legal standard. If so, then we consider whether the trial court's decision was one of several reasonable ones which could have been made. We will affirm unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon [the] weighing of relevant factors. This Court also has said that it should engage in measured restraint in conducting appellate review and should not decide whether it would have dismissed the original action but whether dismissal amounted to clear error.

*Edwards v. Coca Cola Bottling Co. United*, 264 So. 3d 763, 768 (¶14) (Miss. 2019) (citations and internal quotation marks omitted).

## DISCUSSION

¶9.     Mubarak's sole argument on appeal is that the circuit court abused its discretion by dismissing her claims against Sullivan. As provided by Rule 37(b)(2)(C), and pursuant to "a trial court's inherent power to protect the integrity of the judicial process, trial courts have broad discretionary authority in discovery matters, including the power to dismiss an action." *Edwards*, 264 So. 3d at 768 (¶15). In determining whether the circuit court here abused its discretion by dismissing with prejudice Mubarak's claims, we consider the following:

> First, dismissal is authorized only when the failure to comply with discovery obligations results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Id.* at 769 (¶16) (quoting *Pierce v. Heritage Props. Inc.*, 688 So. 2d 1385, 1389 (Miss. 1997)). Our caselaw defines "willfulness" as "either a willful, intentional, and bad[-]faith attempt to conceal evidence or a gross indifference to discovery obligations." *Id.* As discussed, "[o]ur review is limited to whether the dismissal amounted to clear error, not whether we would have dismissed the original action." *Id.* at 773 (¶28).

¶10. In the present case, on July 13, 2015, Mubarak's attorney provided responses to Sullivan's first set of interrogatories. The responses, however, lacked Mubarak's signature and were only signed by her attorney. Mubarak's attorney also produced various documents, including portions of Mubarak's medical records from Dr. Gillespie. Sullivan asserted, though, that the records were unauthenticated and failed to contain relevant pharmacy records. Sullivan further asserted that the produced medical records regarding Dr. Gillespie's treatment only dealt with Mubarak's visits on December 16, 2011; January 18, 2012; and August 21, 2012, and failed to include Mubarak's November 15, 2012 visit with Dr. Gillespie. Sullivan acknowledged that Mubarak provided her with a medical authorization, which Sullivan stated she used to obtain Mubarak's authenticated medical and pharmacy records and a complete record of Dr. Gillespie's treatment of Mubarak.

¶11. On September 29, 2015, Sullivan's attorney deposed Mubarak. In direct contradiction to her medical and pharmacy records, Mubarak testified that she had never seen a physician prior to the accident for lower back or neck problems. In addition, Mubarak testified that she had never taken muscle relaxants; she had only ever taken anxiety or depression medication

6

after having a baby; she had only taken prescription pain medication after having a baby or contracting pneumonia; and any pre-accident neck pain she had experienced was limited to having the flu or "stress headaches."

¶12.    As Sullivan contended in her motion to dismiss, the circuit court found that Mubarak provided unsworn answers to Sullivan's first set of interrogatories and had produced copies of only certain of her medical records. The circuit court found that Mubarak's complete medical records showed four visits to Dr. Gillespie between December 16, 2011, and November 15, 2012, and that at each of these four visits prior to the December 18, 2012 collision, Mubarak had "complained of neck and/or back pain" and that medications had been prescribed for her complaints. Mubarak's pharmacy records further revealed that on three separate occasions between January 20, 2012, and November 20, 2012, Mubarak had filled prescriptions for hydrocodone (Lortab), alprazolam (Xanax), and carisoprodol (Soma). Based on Mubarak's medical and pharmacy records, the circuit court concluded that Mubarak had "testified falsely about her preexisting medical conditions and their treatment—including [treatment she received] a little more than a month prior to the accident."

¶13.    After concluding that Mubarak failed to comply with her discovery obligations by providing false deposition testimony, the circuit court considered whether the circumstances actually warranted the dismissal of Mubarak's claims. As the circuit court noted, despite the medical and pharmacy records that contradicted her deposition testimony, Mubarak never

7

admitted that any such misrepresentations had occurred. In an affidavit filed in response to Sullivan's motion to dismiss, Mubarak stated (1) her family was from Honduras, (2) she was born in California, and (3) Spanish was her first language and her family's primary language. But nowhere did Mubarak contend, nor does the record indicate, that she had difficulty understanding or complying with her discovery obligations. Mubarak also never asserted that she had been unable to recall the medical treatment referenced by Sullivan's motion to dismiss. In light of Mubarak's misrepresentations and the absence of any credible explanation for such, the circuit court concluded that Mubarak had knowingly failed to answer deposition questions truthfully and was therefore not a blameless client in the matter.

¶14. Upon review, we find the circuit court was within its discretion to find that Mubarak's inaccurate deposition testimony resulted from willfulness and bad faith rather than an inability to comply with her discovery obligations. In arguing on appeal that the dismissal of her claims was unwarranted, Mubarak points out that she provided Sullivan with a medical authorization to allow Sullivan full access to her medical records. In *Edwards*, however, the supreme court rejected this very argument and found that the plaintiff's provision of a medical authorization failed to substantially benefit her case. *Edwards*, 264 So. 3d at 773-74 (¶30). The supreme court instead noted that although the trial court in *Edwards* had before it the evidence of the signed medical authorization, the court had not weighed that fact in the plaintiff's favor in its carefully considered and articulate conclusion. *Id.* at 774 (¶30). The supreme court further stated in *Edwards* that it had never before held a trial court was

8

required "to find in every case involving false discovery responses" that a plaintiff's signed medical authorization demonstrated a lack of motive for deception. *Id.* As in *Edwards*, the circuit court here had before it the evidence of Mubarak's signed medical authorization but still found that Mubarak had willfully failed to comply with her discovery obligations. We conclude that such a finding was well within the circuit court's discretion to make.

¶15. In reaching its final judgment in this case, the circuit court clearly considered but ultimately rejected lesser discovery sanctions. For example, the circuit court considered as alternatives to dismissal cross-examination of Mubarak at trial, charging Mubarak with any costs Sullivan had incurred due to the misrepresentations, and reducing the amount of any jury verdict Mubarak received. Citing *Pierce*, however, the circuit court concluded that any sanction other than dismissal would allow Mubarak "to get away with lying under oath without a meaningful penalty . . . ." *Pierce*, 688 So. 2d at 1391. The circuit court further stated that any sanction other than dismissal would, at best, leave the case in the same posture as though Sullivan had never filed her motion to dismiss. At worst, the circuit court found any alternative sanction would provide Sullivan without any remedy for Mubarak's seemingly deliberate subversion of the judicial process.

¶16. As a final consideration, the circuit court discussed the prejudice, if any, that Sullivan had experienced due to Mubarak's misrepresentations. The misrepresentations would require Sullivan to conduct further discovery and incur further expense. In addition, any subsequent treatment Mubarak had sought would make it difficult, if not impossible, to separate the costs

9

attributable to Mubarak's pre-existing condition from those associated with the collision. The circuit court therefore concluded that Sullivan had suffered substantial prejudice.

¶17. The circuit court here "properly analyzed [Mubarak's] discovery violations, applied appropriate weight to each misrepresentation, and arrived at a justifiable conclusion." *Edwards*, 264 So. 3d at 775 (¶34) (quoting *May v. Austin*, 240 So. 3d 389, 398 (¶31) (Miss. 2018)). Because the circuit court applied the correct legal standard and we cannot say "there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon [the] weighing of relevant factors[,]" we find this assignment of error lacks merit. *Id.* at 768 (¶14) (quoting *Pierce*, 688 So. 2d at 1388)).

## CONCLUSION

¶18. Because we find the circuit court acted within its discretion by dismissing with prejudice Mubarak's claims against Sullivan, we affirm the circuit court's judgment.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**